# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 1:09-CR-00011 LJO |
| Plaintiff, | ORDER RE DEFENDANT'S REQUEST FOR CLARIFICATION OF SENTENCE (DOC. 23) |
| v. | |
| PAUL PISCIOTTA, | |
| Defendant. | |

On January 16, 2001, while already incarcerated on a 60-month sentence, Defendant Paul Pisciotta was sentenced in the United States District Court for the District of Arizona to a 120-month term of imprisonment followed by a 60-month term of supervised release for aiding and abetting his former wife in selling marijuana while Defendant was incarcerated. *See* Doc. 18 at 6; District of Arizona, Case No. 98CR00743-002-TUC-JMR, Doc. 198 (2001 Arizona Judgment and Commitment). While, initially, the Bureau of Prisons calculated Defendant's release date based upon the 120-month term of imprisonment running concurrent with his pre-existing 60-month term, in 2004, the Bureau of Prisons re-calculated his release date, running those sentences consecutively. Doc. 18 at 6. At some point prior to July 2005, Defendant was relocated from Tucson, FCI in Arizona, to the Taft Correctional

Institution Satellite Camp ("Taft Camp").

On July 13, 2005, Defendant voluntarily walked away from and never returned to the Taft Camp, *See* Doc. 19 at 2 (Government's Sentencing Memorandum); Doc. 21 (Judgment and Commitment). On May 15, 2009, Defendant pleaded guilty before this Court to escaping from federal custody, in violation of 18 U.S.C. § 751(a). Doc. 15. He was sentenced to a 15-month term of imprisonment to be served <u>consecutively</u> to the sentence imposed in the Arizona case, along with a 3-year term of supervised release (the Judgment and Commitment did not specify whether the term of supervised release was to run consecutively or concurrently). Doc. 21.

In a March 27, 2015 letter to the Court, Defendant indicates that the Bureau of Prisons has informed him that he is slated to serve up to 180 days in a halfway house subsequent to his release and that he will also have to serve a 5-year term of supervised release. *Id*. Defendant maintains this is erroneous because this Court ordered his sentence for escape to run consecutive to his prior sentence(s) and therefore that the prior sentence "had to expire before [he] started [his escape] sentence in order to be consecutive." *Id*.

Plaintiff misunderstands the situation. First, as to his term of imprisonment, if the Bureau of Prisons has indicated Plaintiff is eligible for halfway house placement, that is a determination made entirely by the Bureau of Prisons and is not ordered by any Judgment and Commitment in this case or his Arizona case. To the extent Plaintiff does not understand how halfway house placement relates to his terms of imprisonment, he is instructed to contact his lawyer for a further explanation. This Court lacks jurisdiction to address Plaintiff's concerns about halfway house placement.

As to Plaintiff's term of supervised release, 18 U.S.C. § 3624(e) provides that any term of supervised release commences on the day the person is released from custody and runs concurrently with any other Federal, State or local term of probation, supervised release or parole for another offense to which the person is subject. As this Court has no power to alter the 5-year term of supervised release

ordered by the Arizona court, it is entirely logical for the Bureau of Prisons to indicate that his term of supervised release is the longer of the two terms to which Defendant was sentenced. Again, to the extent Plaintiff does not understand how his term of supervised release has been calculated, he is instructed to contact his lawyer. This Court will not entertain further informal requests for clarification.

IT IS SO ORDERED.

Dated:   **April 7, 2015**                              **/s/ Lawrence J. O'Neill**
                                                         UNITED STATES DISTRICT JUDGE